INVESTMENT PROPERTY CORP. OF NEW ENGLAND *vs.*
GEORGE D. WHITTEN & others.

Middlesex.   November 3, 1969. — December 8, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Broker*, Commission.   *Contract*, With broker, Performance and breach.

In an action by a real estate broker for a commission in which there was
a verdict for the plaintiff, exceptions of the defendant must be sustained
by reason of inadequacy and inaccuracy of the charge to the jury with
respect to conditions which the jury could have found on the evidence
to have been imposed by the defendant, that the defendant's obligation
to sell should be subject to approval of the sale by the defendant's
lawyer and accountant and that the defendant should be obligated to
pay a commission only if title to the property actually passed to the
prospective buyer produced by the plaintiff.

CONTRACT.   Writ in the Superior Court dated May 11,
1965.

The defendants alleged exceptions following a verdict for
the plaintiff at the trial before *Ponte*, J.

*Samuel Adams* for the defendants.

*Allan van Gestel* for the plaintiff.

CUTTER, J.   The plaintiff (Investment), engaged in the
real estate brokerage business, seeks in this action of con-
tract to recover a commission from the defendant partners
doing business as Mystic Builders' Supply (Mystic).   The
jury returned a verdict for Investment.   The case has been
argued before us upon Mystic's exceptions to the trial
judge's charge and to his failure to give certain requested
instructions.

Mystic owned certain real estate (the property).   An em-
ployee of Investment approached George Whitten of Mystic
about listing the property for sale.   Richard W. Lubart,
Investment's president, then for the first time met with
Whitten, who said that Mystic would sell the property for
$1,400,000 net to it.   Thereafter Robert Waldman was ap-
proached by Lubart.   At a second meeting with Whitten,
Lubart reported to him that he had an offer (which was from

Waldman) for $1,410,000 gross. He pointed out to Whitten that, at this price, a net payment to Mystic of $1,400,000 would leave an inadequate commission, but that if Mystic would take $1,375,000 net, that would leave a satisfactory commission of $35,000.

There was a conflict of testimony concerning what next took place. Lubart testified that the transaction discussed at the second meeting ($1,410,000 gross price; $1,375,000 net to Mystic; $35,000 commission to Investment) was satisfactory to Whitten, and that Whitten imposed no conditions on his approval of the deal. Whitten, on the other hand, testified that, at the first meeting, he told Lubart that Mystic could not sell the property until its accountants and lawyers had advised whether the transaction, for tax purposes, would result in capital gains or in ordinary income. He also testified that, at the second meeting he told Lubart "if he sold the property that I would — when the property was sold and papers passed — I would sign an agreement if the lawyers and accountants said so, and that he would get the thirty-five thousand dollars." Although this testimony was somewhat confused, we think that, if the jury believed Whitten's testimony, they would be warranted in concluding that Whitten had imposed (a) upon Mystic's obligation to sell the property a condition that its lawyer and accountant approve it, and (b) upon the obligation to pay a commission, a condition that title actually pass. There was testimony that the accountant advised that the sale would result in ordinary income, not capital gains. The sale did not take place and title did not pass. Mystic concedes in its brief that Waldman was a buyer, ready, able, and willing to buy at $1,375,000 net to Mystic. Mystic denies that it unconditionally agreed to accept that price. Mystic saved exceptions to the trial judge's failure to give requested instructions nos. 24 and 25.[1]

---

[1] These read, "24. To find for . . . [Investment] you must find that . . . Whitten, told Lubart that . . . [Mystic] would pay . . . [Investment] a commission of $35,000 if Lubart obtained an offer of $1,410,000 in cash, whether or not the Whittens accepted the offer, whether or not the Whittens' attorney and accountant approved or advised against the sale, and whether

The evidence warranted the conclusion that, at the first meeting, Whitten (for Mystic) agreed to list the property with Investment for $1,400,000 net to Mystic. The jury, if they believed Whitten's testimony, would have been warranted in finding also that, even at the first interview, Whitten imposed a condition upon Mystic's listing of the property for sale then made, that its lawyer and accountant approve the sale from a tax standpoint. The conflict of testimony about the second conference, and whether there existed a second condition that title must pass, has already been noted. Lubart never produced a customer ready, willing, and able to pay a price which would yield $1,400,000 net to Mystic. Thus, even upon the facts most favorable to Investment, it could not recover a commission on the basis of what took place at the first conference alone. Whether Lubart's proposals at the second conference constituted a counter offer, a modification, or a wholly new arrangement, Investment could recover only (a) if the contract after that second conference was that Mystic would pay a commission of $35,000 if Investment produced a customer ready, willing, and able to pay a price sufficient to provide $1,375,000 net to Mystic for the property, and (b) if that contract was subject to no condition either (1) that Mystic's attorney and accountant approve, or (2) that title to the property must actually pass.

The judge should have given request no. 24 which accurately stated the law applicable to the situation if the jury believed Whitten's testimony. We do not need to pass upon request no. 25, which, with respect to conditions "a" and "c," we assume (without deciding) may have gone beyond the evidence. We must determine, of course, whether, view-

---

or not title actually passed to Lubart's . . . customer. 25. To find for . . . [Investment] you must find that. . . . Whitten promised Lubart that . . . [Mystic] would pay . . . [Investment] a commission of $35,000 if Lubart obtained an offer of $1,410,000 in cash and that such promise was not contingent upon any one or more of the following: a. Unconditional acceptance of the offer by . . . [Mystic]. b. The obtaining of approval of . . . [Mystic's] attorney or accountant. c. The entering into of a binding agreement for the sale of . . . [the] property between . . . [Mystic] and Lubart's customer. d. Title actually passing to Lubart's . . . customer."

ing the charge as a whole, the judge did give the substance of request no. 24. Without quoting extensively from the original charge, we think that it[2] made no adequate reference to the condition, testified to by Whitten, in effect that a commission was to be paid only if title to the property did in fact pass. Mystic's attorney adequately brought this omission to the attention of the judge. The judge thereupon gave additional instructions[3] which referred to both (a) the alleged condition concerning the attorney's and accountant's approvals, and (b) the alleged condition concerning actual passage of title. At the close of the additional instructions, Mystic's attorney once more sought to object and the judge saved his exceptions to the "failure to enlarge on . . . Mystic's requests . . . No[s.] . . . 24 and 25."

The additional instructions did not adequately meet the situation in two respects. First, these instructions in effect required that the condition about actual passing of title be found to have been imposed by Mystic when it "engaged

---

[2] We see no occasion to pass upon Mystic's contention that the charge (a) did not adequately make clear, in effect, that the brokerage contract must be viewed as it existed after whatever arrangement was made at the second conference; and (b) contained confusing and possibly irrelevant instructions about the time before which Mystic must withdraw the property from sale to escape liability.

[3] These additional instructions were in part: "I told you that if you find the facts to be in accordance with . . . [Investment's] contention that there were no conditions, and . . . that . . . [Investment] produced a customer ready, willing and able to purchase the property for the price that you find was agreed to, then your verdict must be in favor of . . . . [Investment]. I told you that [it must be for Mystic] if you found the facts to be in accordance with . . . [Mystic's] contention . . . namely that the defendants agreed to sell for $1,375,000 and pay $35,000 commission, but that there were conditions imposed — and I mentioned only one condition, and that was if the defendants' attorney and accountant said it was okay. . . . [M]y memory now serves me that there was one other condition, and it's for you to determine from the evidence whether or not this other condition was imposed by . . . [Mystic] *at the time that . . . [Mystic] engaged . . . [Investment] . . . as broker.* It's for you to say whether or not . . . Whitten at the time that he mentioned the condition as to approval by his accountant and attorney said in addition to that that . . . [Mystic] would pay the plaintiff $35,000 if . . . the property [was sold], *when it was sold and the papers were passed.* . . . [It is] undisputed that papers never passed to Lubart's customer. If you find that that was one of the conditions that was imposed, and if you find that the condition of approval by the attorney and the accountant was also imposed, if you find that those conditions existed and were a part of the agreement, *then if you find that those conditions were not met,* then your verdict must be in favor of . . . [Mystic]" (emphasis supplied).

. . . [Investment] as broker." This was confusing, if not inaccurate. Investment could have been found to have been engaged as broker at the first conference. If the jury found that either condition was imposed at the second conference (when at least the price under discussion was changed), that would have been soon enough. Second, the final sentence (quoted in fn. 3) strongly implied that, to warrant a verdict for Mystic, the jury must find that both conditions had not been met. This was not correct. If the jury believed Whitten's testimony, then it would have been sufficient to warrant a verdict for Mystic that either condition had not been met.

*Exceptions sustained.*